IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NATHAN REY MUSQUIZ,<br><br>Defendant. | 4:18CR3116<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

On July 23, 2018, Defendant Nathan Rey Musquiz was detained and spoke with law enforcement. Contraband was discovered in his vehicle, and the discovery of an existing warrant led to his arrest. He now moves to suppress the statements he made and any evidence gathered, arguing that it was obtained during an unlawful search, seizure, and interrogation. For the reasons stated below, the motion to suppress should be denied.

STATEMENT OF FACTS

After hearing testimony and reviewing the documentary evidence, the undersigned magistrate finds the following facts are credible.

On July 23, 2018, Officer Wendy Baumeister was dispatched to a home in Grand Island, Nebraska to investigate a suspicious vehicle, a blue truck in an alley. ([Filing No. 54 at CM/ECF p. 11](#)). Baumeister arrived at the reporting individual's home at approximately 6:10 a.m. and pulled into the driveway. ([Filing No. 54 at CM/ECF p. 18](#)). The resident informed the officer that there was a blue pickup truck parked in an alley that had not been parked there the night before, and the resident did not know who owned the truck. (Id. at pp. 11-12). The truck

in the alley was visible from the driveway. (Id. at 33-34). Baumeister believed the alley to be owned by the City of Grand Island. The alley is accessible to pedestrians. (Filing No. 54 at CM/ECF p. 20-21)

Baumeister approached the truck and saw a man who appeared to be asleep in the driver's seat with his head against the driver's side window. (Filing No. 54 at CM/ECF p. 21). The man was wrapped in a blanket and his breathing was slow and steady. (Id.). It was unclear to Baumeister whether the man was injured or needed medical attention. (Id.). She removed her ASP (baton) and knocked on the window with it. (Id. at 22). It took a couple of minutes of knocking with her hands and the baton to wake him. (Id., Filing No. 54 at CM/ECF p. 38).

While she was knocking, and before the man awakened, Baumeister noticed a glass pipe on the center console. (Id at 22-23, Exhibit 7). The pipe was visible from outside of the car, before the door was opened. (Filing No. 54 at CM/ECF p. 24). Based upon her experience in law enforcement, Baumeister believed that the pipe was the type used to ingest drugs, specifically methamphetamine. (Id.). A portion of the tube was darkened and there was a white residue in the curve of the pipe, indicating the pipe has been used. (Id., Filing No. 54 at CM/ECF pp. 39, 51).

When the man awakened, Baumeister instructed him to open the car door. It appeared to Baumeister that the man had trouble understanding and executing her instructions. (Filing No. 54 at CM/ECF p. 25). Baumeister observed that the truck was turned off, the keys were in the ignition, and it was in reverse. (Filing No. 54 at CM/ECF p. 26). Baumeister advised the man that he was being detained. Since she was the only officer at the scene and had observed the glass

pipe in the vehicle, she placed the man in handcuffs as a precaution and to "secure the scene." (Id).

Baumeister had a conversation with the man, who stood next to the truck. Baumeister asked him his name, who owned the truck, and why he was parked in the alley. The man identified himself as the defendant herein, Nathan Musquiz, and he stated he was waiting to pick up a woman from a nearby home. He told Baumeister that the truck belonged to his uncle, Paul.

Baumeister also asked questions about the dirt bike secured in the back of the truck. Musquiz stated that he had purchased it the night before, but he could not recall details regarding the cost of the bike or from whom he purchased it. (Filing No. 54 at CM/ECF pp. 27-28). During this questioning, Baumeister did not use a raised voice or deceptive tactics, and Musquiz responded voluntarily to her questions. (Filing No. 54 at CM/ECF p. 30). Officer Stegman arrived, and Baumeister received feedback from dispatch that there was an active warrant for Musquiz's arrest in Hall County. (Filing No. 54 at CM/ECF p. 29). Musquiz was then advised that he was the subject of an arrest warrant. (Id. at 31). The time between when Musquiz exited the truck and the time he was advised he was under arrest was merely three to four minutes.[1]

Musquiz was placed in the back of Stegman's patrol vehicle. (Id.). Baumeister then searched the truck and found a purple drawstring Adidas bag which contained drugs, personal items, and U.S. currency. (Id. at pp. 31-32). Baumeister also found prescription drug bottles which, according to the labels, belonged to Paul. (Id. at 32). Baumeister also observed an Apple cell phone

---

[1] The government represented that it would not seek to admit any statements made after the police were advised that there was a warrant for Musquiz's arrest. (Filing No. 54 at CM/ECF p. 6).

3

inside of the truck. After searching the truck, Baumeister advised Musquiz of his Miranda[2] rights and asked if he would like to speak with her. He responded by shaking his head, which Baumeister interpreted as a negative response. (Id.).

Paul arrived and claimed ownership of the truck. He did not claim ownership of the dirt bike or the contraband. (Filing No. 54 at CM/ECF p. 44). The truck was released to him. Later, Baumeister went to Paul's home to ask whether the cell phone in the truck belonged to him and he denied ownership. Baumeister asked if she could have it and Paul gave her the phone. (Filing No. 54 at CM/ECF p. 49). On August 21, 2018, the Grand Island Police Department applied for a warrant to search the digital contents of the cell phone seized on July 23, 2018. (Filing No. 59 at CM/ECF pp. 11-13). The warrant was issued on the same day. (Filing No. 59 at CM/ECF p. 14).

ANALYSIS

I. Initial Contact

Musquiz asserts the initial encounter was void of reasonable suspicion that a crime was being committed. He argues that the police reports do not indicate that he was trespassing or in violation of the law, and the vehicle was not located on the property of the individual who contacted the police, therefore the officer approaching the truck and knocking on the window was "not reasonable and justified." (Filing No. 37 at CM/ECF p. 3). Thus, he argues, because the initial interaction was illegal, the items seized should be suppressed.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).

The Grand Island Police Department received a call about a truck parked in an alley behind homes in a residential area. Baumeister testified that the alley is owned by the City of Grand Island and it is open and accessible to pedestrians. It was not improper for Baumeister to enter the alley and approach the truck in response to the report of a suspicious vehicle. Further, Baumeister was not without reasonable suspicion to believe that a crime was committed, because, as she testified, it is illegal to park in an alley. (Filing No. 54 at CM/ECF p. 33).

When Baumeister approached the truck, she found an individual asleep behind the wheel and she was unsure whether he needed help or medical attention. An officer has the right to ask questions as to the safety of the occupants and general questions about why they were sleeping in a car. United States v. Mayfield, No. 8:10CR390, 2011 WL 344108, at 3 (D. Neb. Feb. 1, 2011). A police officer is not only permitted, but expected, to exercise community caretaking functions when "the officer has a reasonable belief that an emergency exists requiring his or her attention." United States v. Harris, 747 F.3d 1013, 1017 (8th Cir. 2014). See also, Samuelson v. City of New Ulm, 455 F.3d 871, 877 (8th Cir. 2006) (quoting Winters v. Adams, 254 F.3d 758, 763 (8th Cir.2001) (holding a seizure without suspicion was reasonable because allowing a "possibly intoxicated individual to drive [a] vehicle" created a serious risk to the public).

Baumeister had both reasonable suspicion that a crime had occurred (as the truck was parked illegally), and justification for contacting a vehicle occupant who was located in a parked vehicle with keys in the ignition, was difficult to rouse, and appeared to possess drug paraphernalia. The evidence should not be suppressed on the basis that the initial interaction was unjustified and illegal.

5

II. Probable Cause to Search

Musquiz argues that "Viewing an item which can be lawfully purchased and possessed in Nebraska does not provide probable cause to search a vehicle." (Filing No. 37 at Cm/ECF p. 6).

Probable cause exists when "considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." United States v. Edwards, 891 F. 3d 708, 711 (8th Cir. 2018, citing United States v. Velazquez-Rivera, 366 F.3d 661, 664 (8th Cir. 2004). The standard is "not a high bar," and it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." U.S. v. Edwards, citing District of Columbia v. Wesby, 138 S.Ct. 577, 586 (2018).

In this situation, Baumeister observed a truck that was stopped in an alley, which she testified is not legal. While standing outside of the truck and attempting to rouse the sleeping occupant, Baumeister observed a glass pipe on the center console. It may be true that such an item may be lawfully purchased and possessed, but it is also true that Baumeister observed darkening and residue on the pipe which, in her experience, indicates the pipe had been used to ingest methamphetamine. Baumeister testified that possession of a pipe used for ingesting controlled substances is a law violation for which an individual would be cited.

Under the circumstances there was trustworthy information which led Baumeister to believe that Musquiz had committed or was committing one or more criminal violations. Baumeister had probable cause to search the truck.

III. Statements

Musquiz argues that any statements "made between his initial detention and being placed under arrest were without the benefit of his Miranda warnings, while he was in custody." (Filing No. 37 at CM/ECF p. 7).

"Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." U.S. v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004)(quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)(emphasis in original)). "The ultimate inquiry to determine custody for Miranda purposes is whether there was a formal arrest, or restraint on freedom of movement of the degree associated with a formal arrest." U.S. v. Flores-Sandoval, 474 F.3d 1142, 1146 (8th Cir. 2007) (quoting U.S. v. Black Bear, 422 F.3d 658 at 661 (8th Cir. 2005).

There are two discrete inquiries essential to the "in custody" determination. The court must consider: 1) the totality of the historical circumstances confronting the suspect; and 2) given those circumstances, whether a reasonable person would consider their freedom of movement restricted to the degree associated with a formal arrest. LeBrun, 363 F.3d at 720 (citing Thompson v. Keohane, 516 U.S. 99, 112 (1995)). The Eighth Circuit has identified the following factors for the court's consideration in determining whether a suspect was "in custody:"

(1) whether the suspect was informed that he or she was free to leave or was not under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

7

> (4) whether police used strong-arm tactics or deceptive strategies during questioning;
>
> (5) whether the atmosphere of the questioning was police-dominated; and
>
> (6) whether the suspect was arrested at the end of the questioning.

United States v. Galceran, 301 F.3d 927, 929-930 (8th Cir. 2002). This list is not exhaustive, and no one factor is necessarily dispositive. Galceran, 301 F.3d at 930. Rather, the court must look at the totality of the circumstances, with the determination based "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. LeBrun, 363 F.3d at 720 (quoting Stansbury v. California, 511 U.S. 318, 322-23 (1994)).

Contacts between police and citizens in vehicles are typically noncoercive and "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984), see, also United States v. Pelayo-Ruelas, 345 F.3d 589 (8th Cir. 2003). A person is not necessarily in custody for Miranda purposes even if a reasonable person in his or her position would not feel free to leave. "One is not free to leave a Terry[3] stop until the completion of a reasonably brief investigation, which may include limited questioning. But most Terry stops do not trigger the detainee's Miranda rights." U.S. v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003).

During the initial encounter, Musquiz was handcuffed and told that he was being detained. Baumeister was entitled to take reasonable protective measures, including restraining his hands, as she was the only officer at the scene, Musquiz was potentially under the influence, and she had observed possible drug

---

[3] Terry v. Ohio, 392 U.S. 1 (1968)

8

paraphernalia and wanted to preserve the scene. Moreover, during a Terry stop, "officers may 'handcuff a suspect . . . to protect their personal safety' and to maintain the status quo." United States v. Harris, 747 F.3d 1013 (8th Cir. 2014) (quoting United States v. Smith, 645 F.3d 998, 1002 (8th Cir. 2000)).

Baumeister did not use a raised voice, she did not use deceptive tactics, and Musquiz responded voluntarily to her questions. Musquiz was standing next to the truck in full view of the public and the exchange lasted only three or four minutes. (Filing No. 54 at CM/ECF p. 30). Considering the totality of the circumstances, a reasonable person in Musquiz's position would not consider their freedom of movement restricted to the degree associated with a formal arrest.

It is clear that Musquiz was merely detained during the time between when Musquiz was asked to step out of the vehicle until the officers learned of the active warrant and placed him under arrest. Because he was not in custody, no Miranda advisement was necessary until Musquiz was placed under arrest. The statements made after Musquiz was detained and before he was placed under arrest should not be suppressed.

## IV. Cell Phone

Musquiz asserts the evidence derived from the search of his cell phone should be suppressed as the search was "unreasonable under the Fourth Amendment because of law enforcement officers' delay in obtaining a warrant to search it."[4] (Filing No. 59 at CM/ECF p. 3). He argues that the delay of 29 days

---

[4] At the evidentiary hearing, defense counsel questioned whether the police had a warrant or other permission to obtain the cell phone from Musquiz's

9

between seizing the phone and applying for a warrant to search it was unreasonable. Musquiz claims Baumeister lacked any basis for concluding the phone had any evidentiary or illegal character when it was seized, and the delay in searching the cell phone following the seizure was unreasonable and deprived him of the functions and information on the phone without his consent. He argues that as a result of this seizure and unreasonably delayed search, all evidence obtained from the phone must be suppressed.

Citing the Second[5], Ninth[6], Tenth[7], and Eleventh[8] circuits, Musquiz urges this court to adopt and apply an "unreasonable delay" test as a basis for concluding the search of his cellphone violated the Fourth Amendment. Under this test, the reasonableness of the alleged delay is evaluated on a case-by-case basis and in light of all the facts and circumstances, including the significance of the interference with the person's possessory interest, the duration of the delay, whether or not the person consented to the seizure, and the government's legitimate interest in holding the property as evidence. United States v. Laist, 702 F.3d 608, 613-14 (11th Cir. 2012) quoting United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009).

---

uncle. (Filing No. 54 at CM/ECF p. 9) This issue was not presented in the initial brief on the motion to suppress and it was not addressed in the supplemental brief. Therefore, this issue will not be addressed by the court.

[5] United States v. Martin, 157 F.3d 46 (2nd Cir. 1998) (upholding as reasonable an 11-day delay in obtaining a warrant to search a seized package).

[6] United States v. Sullivan, 797 F.3d 623 (9th Cir. 2015) (upholding as reasonable a 21-day delay in obtaining a search warrant to search a laptop seized during a search authorized by the terms of defendant's probation).

[7] United States v. Christie, 717 F.3d 1156 (10th Cir. 2013) (upholding as reasonable a five-month delay in obtaining a search warrant).

[8] United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009) (21-day delay in obtaining a search warrant for a hard drive was unreasonable and the child pornography found on the hard drive was suppressed).

The significance of any interference with the person's possessory interest depends, at least in part, on whether the person was in custody during the seizure. In Segura v. U.S., 468 U.S. 796 (1984), the Court explained that the actual interference with the defendants' possessory interests in an apartment were "virtually nonexistent" when the defendants were under arrest and in the custody of the police throughout the entire period of the seizure. Segura v. U.S., 468 U.S. 796 (1984). And the temporary seizure of a computer while a defendant was in jail "did not meaningfully interfere with his possessory interests." U.S. v. Clutter, 674 F.3d 980, 984 (8th Cir. 2012).

Contrary to the cases cited by Musquiz, between the time of his arrest and the presentation of an application to search the cellphone, Musquiz was in custody. He was therefore unable to possess and use his cellphone during that time. As such, any delay in seeking a warrant to search the phone did not significantly interfere with his possessory interest in the phone.

Musquiz did not personally consent to the seizure or search of his cellphone, although his uncle possessed the cellphone and handed it to law enforcement officers without complaint or hesitation.[9] But even absent any finding of consent, Musquiz, the sole occupant of the vehicle parked in the alley, was found in possession of approximately 50 grams of methamphetamine, exceeding amounts held for personal use. (Filing 54 at CM/ECF p. 44). Under the circumstances presented, the officers had reason to believe the cellphone may contain evidence of criminal activity.

---

[9] The court further notes that "[e]ven when a third party lacks actual authority to consent to search or seizure of shared property or premises, the Fourth Amendment is not violated if the officers reasonably relied on the third party's apparent authority to consent." United States v. Clutter, 674 F.3d 980, 983 (8th Cir. 2012).

11

Musquiz argues that law enforcement may not seize and hold property indefinitely before applying for a warrant to confirm that the property is indeed contraband or has evidentiary value. (Filing No. 59 at CM/ECF p. 8, citing United States v. Fife, 356 F. Supp. 3d 790 (N.D. Iowa 2019)). However, there is no indication that this was an *indefinite* seizure. Here, the delay was only 29 days, with delays of up to five months considered reasonable under certain circumstances. See e.g., Christie, 717 F.3d at 1164.

Under the facts presented, Musquiz' possessory interest in the phone was essentially negated by his incarceration. Balancing Musquiz' interest with the government's interest in securing and obtaining evidence of criminal activity, I find the 29-day delay in seeking a warrant to search the digital data on Musquiz' phone was not unreasonable. The evidence from the cell phone should not be suppressed.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 36) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before Richard G. Kopf, Senior United States District Judge, in Courtroom 1, United

States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **July 29, 2019**, or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

June 26, 2019.

                                                BY THE COURT:

                                                *s/ Cheryl R. Zwart*
                                                United States Magistrate Judge